**SUPPRESSED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

APR 2 9 2026

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **4:26-cr-193-MAL/JSD** |
| v. | ) | |
| | ) | |
| KARI BERTELS, | ) | |
| | ) | |
| Defendant. | ) | |

## INDICTMENT

The Grand Jury charges that, at all times material to this Indictment, unless otherwise specified below:

## INTRODUCTION

1.     During the scheme to defraud, Defendant Kari Bertels ("Defendant Bertels") stole over $1,200,000.00 from her employer, Company I.T.C.   To execute the scheme to defraud, Defendant Bertels made material misrepresentations to the owner of Company I.T.C. so that she could obtain and keep her company credit card.   Instead of using the company credit card to pay for required business expenses—as both Defendant Bertels falsely represented she would do and had done—Defendant Bertels used the company credit card to purchase for herself and family members vacations, luxury goods, and jewelry, among other personal expenses, none of which was authorized by her victim employer.   Defendant Bertels concealed this unauthorized use of the company credit card from her employer for approximately seven years.

2.     Company I.T.C. is a small business located in St. Louis County, Missouri, within the Eastern District of Missouri.   Defendant Bertels, an accountant and Senior Financial Analyst, was a high-level employee of Company I.T.C. reporting directly to the President of Company

1

I.T.C., and was entrusted with limited access to the company credit cards only to enable Defendant Bertels to pay business expenses that were necessary to the operation of Company I.T.C. Defendant Bertels was also tasked with approving expense reports and paying business expenses from the company checking account, such as the payment of company credit card bills. Defendant Bertels was further tasked with enforcing the corporate credit card policy for all employees and ensuring that employees' expense reports were correctly and timely submitted.

3.      Company I.T.C.'s corporate credit cards were issued by American Express, which is headquartered in New York, NY, and maintains data servers outside the State of Missouri. Payment transactions using American Express credit cards are accomplished by means of wire transmission.

## COUNTS ONE – FIVE
### (Wire Fraud: 18 U.S.C. §§ 1343 and 2)

4.      Each of the above allegations is hereby incorporated by reference as if fully set forth herein.

## I.      The Scheme to Defraud

5.      Beginning by at least on or about October 9, 2018, and continuing through at least on or about January 12, 2026, in the Eastern District of Missouri, and elsewhere, the defendant,

### KARI BERTELS

with the intent to defraud, devised and intended to devise a scheme and artifice to defraud Company I.T.C. and to obtain money and property from Company I.T.C. by means of material false and fraudulent pretenses, representations, and promises, as described further herein. Defendant Bertels undertook the actions detailed below as part of the scheme and artifice to defraud.

2.

6.    To obtain the company credit cards from Company I.T.C., Defendant Bertels falsely represented that she would use a company credit card only to pay necessary business expenses.    In truth and fact, however, Defendant Bertels used a company credit card on hundreds of occasions to pay for purely personal expenses.

7.    For example, on or about the dates listed below Defendant Bertels used a company credit card to pay for the following unauthorized, personal expenses:

| Purchase Date | Unauthorized Use of the Company Credit Card | Amount Spent |
|---|---|---|
| 8/1/2023 | Reservations at a Sandals & Beaches Resorts property | $14,110.00 |
| 1/10/2024 | Southwest Airlines tickets to and from Montego Bay, Jamaica for Defendant Bertels and her family | $3,188.75 |
| 9/21/2024 | Jewelry from Diamonds Direct | $14,331.22 |
| 8/6/2025 | Purchase from Louis Vuitton | $1,424.94 |
| 1/1/2026 | Venmo payment to son of Defendant Bertels | $103.00 |

8.    In addition to the specific unauthorized transactions referenced above, Defendant Bertels also used a Company I.T.C. company credit card to purchase $19,815.27 worth of beauty products from Red Aspen, to spend $16,512.00 on faith-based fitness coaching, to spend $42,407.81 on personal food deliveries from DoorDash, to spend $59,994.17 on personal expenses from Amazon, to spend $27,044.64 on personal expenses from Instacart, and to finance over $15,000 in airfare for herself and family members to and from destinations such as Punta Cana, Dominican Republic; Montego Bay, Jamaica; Cancun, Mexico; Las Vegas, NV; New York, NY; Washington D.C.; San Diego, CA; and Denver, CO.

9.    In total, Defendant Bertels used Company I.T.C.'s company credit cards to spend more than $1,200,000.00 on personal expenses that were not authorized by the President of Company I.T.C., to whom she directly reported.   Defendant Bertels used the company checking account to make online payments to regularly pay off her company credit card expenses, including

the more than $1,200,000.00 in personal expenses that were not authorized by the President of Company I.T.C.

10.    In order to continue her scheme to defraud Company I.T.C., Defendant Bertels concealed her unauthorized credit card purchases.   One concealment method included Defendant Bertels concealing the unauthorized credit expenses by refusing to submit monthly expense reports for the unauthorized credit card purchases.   Another concealment method included Defendant Bertels occasionally entering the payments for her unauthorized credit card purchases into QuickBooks as multiple smaller payments instead of one large payment.   A further concealment method included Defendant Bertels diverting the credit card statements from being sent to Company I.T.C. and, instead, listing her personal residence as the address that appeared on the credit card statements.

## II.    Wire Transmissions

11.    On or about the dates set forth below, within the Eastern District of Missouri, for the purpose of executing the above-described scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same,

**KARI BERTELS**

the defendant herein, did knowingly transmit and cause to be transmitted by means of interstate wire communication certain writings, signs, signals, pictures, or sounds, to wit:

4

| Count | Date | Wire Description |
|-------|------|------------------|
| 1 | 8/1/2023 | Use of Company I.T.C.'s company credit card to fund a vacation at a Sandals & Beaches Resorts property |
| 2 | 1/10/2024 | Use of Company I.T.C.'s company credit card to purchase Southwest Airlines tickets to and from Montego Bay, Jamaica |
| 3 | 9/21/2024 | Use of Company I.T.C.'s company credit card to purchase jewelry from Diamonds Direct |
| 4 | 8/6/2025 | Use of Company I.T.C.'s company credit card to purchase leather goods at Louis Vuitton |
| 5 | 1/1/2026 | Use of Company I.T.C.'s company credit card to pay money via Venmo to Defendant Bertels' son |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATION

The United States Attorney further alleges there is probable cause that:

1.      Pursuant to Title 18, United States Code, Sections 982(a)(2), upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in Counts One-Five, the defendant shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation.

2.      If any of the property described above, as a result of any act or omission of the defendant:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty,

5

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

THOMAS C. ALBUS
United States Attorney


_____
KARIN A. SCHUTE, #62019MO
Assistant United States Attorney

6